A93A1059. HUNTER et al. v. ROUSE-ATLANTA, INC. et al.
(438 SE2d 188)

COOPER, Judge.

Appellants, victims of a shooting incident in the plaza area just outside Underground Atlanta, brought an action against the operators of Underground, Rouse-Atlanta, Inc. and Underground Festival, Inc., alleging a failure to provide adequate security. Appellants appeal the trial court's order granting summary judgment in favor of appellees Rouse-Atlanta and Underground Festival.[1]

Viewed in a light favorable to appellants, the evidence shows that sometime during the evening of August 10, 1990, appellants were walking across an area known as Peachtree Fountains Plaza just outside Underground Atlanta on their way into Underground to get something to eat. At the stairwell leading into Underground, appellants found themselves in between a group of young men wearing red scarves and a group of four young men wearing blue scarves. The young men wearing blue scarves suddenly began shooting at appellants. All three appellants were shot, one of them fatally. Appellants' complaint alleges appellees failed to provide adequate security to the entrances of Underground and failed to remove the young men who shot them from Underground when they knew or should have known that there was an unreasonable apprehension of danger to patrons of Underground from the conduct of these young men.

1. Appellants first argue the trial court erred in granting summary judgment to appellees because it incorrectly applied a "foresight standard" for determining whether appellees owed a duty to guard against such a criminal attack. "The general rule is that a [proprietor] is under no duty to anticipate a criminal assault against an invitee by a third party; however, the rule has been held inapplicable if the [proprietor] had reasonable grounds for apprehending that such a criminal act would be committed." (Citations and punctuation omitted.) *Grandma's Biscuits v. Baisden*, 192 Ga. App. 816, 817 (1) (386 SE2d 415) (1989). "[I]n order to prove that the owner had advance notice of the danger of such an assault, evidence is admissible to show a pattern of prior substantially similar criminal assaults on the premises creating a known dangerous condition for which the [proprietor] may be held liable." (Citations and punctuation omitted.) *Woods v. Kim*,

---

[1] Appellants also brought suit against the alleged gunman; however, he is not a party to this appeal.

207 Ga. App. 910 (429 SE2d 262) (1993). The standard applied by the trial court was whether the proprietor had reasonable grounds for apprehending that such a criminal act would be committed. As such, the trial court applied the proper standard to this case.

Appellants' reliance on this court's decision in *Confetti Atlanta, Ltd. v. Gray*, 202 Ga. App. 241 (414 SE2d 265) (1991), for the proposition that the trial court should have applied a different rule is misplaced. This court in *Confetti* did not apply a rule different from that set forth above. We simply determined that the attack on the plaintiff therein was not an isolated criminal attack but rather "the extension of an uncontained, uninterrupted fight" and that it was foreseeable that a fight which continues unchecked could turn into a more violent encounter. *Confetti*, supra at 243.

2. Appellants nevertheless contend that even if the trial court did apply the correct standard, genuine issues of material fact exist as to whether evidence of prior criminal acts at Underground was sufficient to put appellees on notice of the danger of a shooting attack on appellants. In support of their motion for summary judgment, appellees showed that no shooting had previously occurred at Underground. They produced evidence that they had an agreement with the City of Atlanta whereby its police officers would provide security in the area in question, that the city maintained a police precinct in the above-ground portion of Underground, and that two to three City of Atlanta police officers always patrolled the plaza area. They further showed that two police officers had been patrolling the area in question just before the shooting occurred.

In opposition to the motion for summary judgment, appellants pointed to deposition testimony by the former Chief of Security at Underground that young people in general were "running crazy and intimidating a lot of people" on Friday and Saturday nights and that his request for additional security to assist in controlling the young people had been turned down. As to the youths in question, he testified that they had frequented Underground and that a couple of them had been issued criminal trespass warnings and asked to leave. He had seen the youths in question wearing blue bandannas which he understood could be symbolic of gang membership; however, he did not consider the youths to be members of a gang.

Appellants also submitted a handwritten statement of a flower seller at Underground who was apparently present during the shooting. The statement said that on the night of the shooting the four young men in question were sitting on the steps leading into Underground from approximately 6:30 p.m. on drinking beer from brown paper bags and verbally harassing visitors entering Underground. It also said that three to four weeks before the shooting the youths in question were involved in an altercation with some other young men

in the area of Underground adjacent to Pryor Street in which they threw bottles at the other young men. While appellants refer to this notarized statement as an affidavit, it does not state that it was based upon the flower seller's personal knowledge or even that he witnessed any of the incidents to which he attested.

The dangerous condition alleged by appellants to exist in the plaza area outside Underground was that the presence of the youths who shot appellants presented a risk of a violent criminal attack on patrons of Underground. However, none of the incidents described by the former Chief of Security involved personal injury to patrons of Underground. We cannot say that young people "running crazy" and verbal harassment of Underground patrons by the youths in question were so substantially similar to the attack on appellants as to place appellees on notice that appellants might be shot. See *Tolbert v. Captain Joe's Seafood*, 170 Ga. App. 26 (2) (316 SE2d 11) (1984). Finally, even assuming the flower seller's statement describing the bottle-throwing incident provided competent evidence of a prior incident at Underground involving the youths in question, the statement does not show that this attack involved patrons of Underground. See *Gay v. Franchise Enterprises*, 203 Ga. App. 870 (418 SE2d 135) (1992). "Thus, the [statement] was insufficient to establish the essential element of [appellees'] knowledge of prior substantially similar incidents sufficient to place [appellees] on notice of a danger to [appellants]." Id. at 872. "As a matter of law, appellee[s] owed no duty to protect [appellants] from the attack at issue. [Cits.]" *Woods*, supra at 911.

"Since appellee[s] did not know of the dangerous conditions giving rise to the present attack . . . we find no merit in the claim that appellee[s] failed to provide security adequate to prevent this kind of attack. [Cit.] There was no evidence that any security efforts undertaken by appellee[s] were otherwise below a reasonable standard of care, made the situation worse by increasing the danger, misled [appellants] into the belief that the danger had been removed, or deprived [appellants] of the possibility of help from other sources. [Cits.]" *Woods*, supra at 911. Accordingly, the trial court's grant of summary judgment to appellees was proper.

*Judgment affirmed. Beasley, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 24, 1993.

*Gerry Carty*, for appellants.
*Gorby & Reeves, Michael J. Gorby, Amanda H. Burri*, for appellees.