**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 24, 2014**

# In the Court of Appeals of Georgia

A14A0219, A14A0220. INTERNET BRANDS, INC. v. JAPE; and
   vice versa.

BOGGS, Judge.

In these cases consolidated for purposes of appeal, we consider whether the Communications Decency Act of 1996 ("CDA"), 47 USCS § 230, bars Dan Jape's defamation action against Internet Brands, Inc. We conclude that the CDA does apply to bar Jape's claim, and therefore hold in Case No. A14A0219 that the trial court erred in denying Internet Brands' motion for summary judgment. In Case No. A14A0220, we affirm the trial court's denial of Jape's motion for sanctions "for abuse of mediation."

The relevant facts here are undisputed. Internet Brands owns and operates a website for boating enthusiasts, proving a forum for individuals to "chat" and share

information related to boating. Registered users, or members, engage in discussion on the website by posting comments under user names they create. According to Patrick Stack, an Internet Brands manager, the website has no moderators, but does have a single administrator. Some members of the website have the ability to delete "spam" posts ("e. g., posts that offer items for sale"). Stack averred that these "spam deleters" are not employees of Internet Brands and are not paid any cash compensation. Spam deleters are not authorized to ban users, remove posts or delete discussion threads, or perform the functions of a moderator or administrator. Members generally have, however, the ability to block another member's posts from his or her own view.

Alderson, a member and regular user of the website, was one of the website's spam deleters. He was not a moderator or administrator of the website, was not an employee or contractor of Internet Brands, and was not paid cash compensation.[1]

Jape, a member of the website, was the owner of a business under the name Reliable Heating and Air. When another member posted a thread on the website about a child killed in a boating accident, Jape, under his user name, posted comments about

---

[1] Jape asserts that Alderson received a free membership to the website as compensation for his role as a spam deleter, but has failed to point to evidence of this in the record.

2

the death of his own daughter whom he explained had drowned in a bathtub years earlier.

Alderson apparently discovered Jape's real name, and found information about Jape from another website that discussed or made reference to documents related to the bankruptcy of Jape's business, domestic violence between Jape and his wife, circumstances surrounding his divorce, and affidavits for Jape's arrest for various crimes. Alderson also discovered court documents which included an affidavit and letter submitted by Jape's daughter years prior to her death, accusing Jape of being a drug user and physically as well as verbally abusive. Alderson posted comments about what he had discovered, included a link to the website where he discovered the information, and questioned Jape's version of the circumstances surrounding his daughter's death.

Jape responded to a number of Alderson's posts and disputed the information. When he attempted to block Alderson's posts from his view, he received the following error message: "Sorry [Alderson] is a moderator/admin and you are not allowed to ignore him or her." Internet Brands asserted that while Alderson was not a moderator or administrator, the "ignore" function of the website software "does not have the technical capability to distinguish between individuals given the ability

within the software to delete spam posts and moderators or administrators." "Thus, if a person attempts to ignore a spam deleter, they are sent the same message."

Jape subsequently filed a complaint against Internet Brands, Alderson, and three John Does for defamation. Following some discovery, Internet Brands moved for summary judgment on the ground that it is immune from liability under the CDA, and alternatively on the ground that the statements made were not defamatory. The trial court denied the motion for summary judgment, and Internet Brands now appeals.

*Case No. A14A0219*

1. Internet Brands asserts that the trial court erred in denying its motion for summary judgment. "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c)." (Citations and punctuation omitted.) *Woodcraft by MacDonald, Inc. v. Ga. Cas. & Sur. Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013).

Internet Brands argues that the CDA bars Jape's claim for defamation. The CDA provides in relevant part: "Protection for 'Good Samaritan' blocking and

screening of offensive material. (1) Treatment of publisher or speaker. No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 USCS § 230 (c) (1). The CDA "precludes plaintiffs from holding interactive computer service providers liable for the publication of information created and developed by others." *Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F3d 250, 252 (4th Cir. 2009). It

> bars the institution of a "cause of action" or imposition of "liability" under "any State or local law that is inconsistent" with the terms of § 230 . . . . Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them. State-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online.

(Citations and punctuation omitted.) *Ascend Health Corp. v. Wells*, 2013 U.S. Dist. LEXIS 35237 at *20-21 (E.D. N. C. 2013).

In enacting the CDA, Congress made the following findings:

> (1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

(2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

(3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

(4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.

(5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

47 USCS § 230 (a). Congress also declared that the "policy of the United States" is to, among other things,

> promote the continued development of the Internet and other interactive computer services and other interactive media[,] preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation[, and] encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services[.]

47 USCS § 230 (b) (1) - (3). Moreover, courts have "consistently held that § 230 provides a 'robust' immunity, and that all doubts must be resolved in favor of immunity." (Citations and punctuation omitted.) *Holomaxx Technologies Corp. v. Microsoft Corp.*, 2011 U.S. Dist. LEXIS 94316 (III) (A) (N.D. Ca. 2011).

While there are no Georgia cases applying the CDA, U. S. District and Circuit Court cases construing the Federal law are instructive.[2]

As explained in *Dimeo v. Max*, 433 FSupp.2d 523 (E.D. Pa. 2006),

[t]hree elements are required for § 230(c)(1) immunity. First, the defendant must be a provider or user of an "interactive computer service." Second, the asserted claims must treat the defendant as a publisher or speaker of information. Third, the challenged communication must be "information provided by another information content provider."

Id. at 529 (II) (1) (a). As found by the trial court, this third element is the subject of the parties' disagreement: the challenged communication must be "information provided by another information content provider." The CDA defines "information

---

[2] We note that "[w]hile we are at liberty to consider foreign authority, the appellate courts of this state are not bound by decisions of other states or federal courts except the United States Supreme Court." (Citation and punctuation omitted.) *Balmer v. Elan Corp.*, 278 Ga. 227, 229-230 (2) (599 SE2d 158) (2004).

7

content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 USCS § 230 (f) (3).

> A website operator can be both a service provider[3] and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider.

*Fair Housing Council &c. v. Roommate.com*, 521 F3d 1157, 1162-1163 (9th Cir. 2008).

Internet Brands argues that the CDA bars Jape's claim because the statements were made by another information content provider, Alderson, not Internet Brands. Jape counters that because Internet Brands held Alderson out as a moderator/administrator and gave him the authority to reject users' attempts to block

---

[3] "Interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 USCS § 230 (f) (2). It is undisputed that Internet Brands is an "interactive computer service."

him, he acted as an agent of Internet Brands, and therefore Internet Brands was also a content provider and not entitled to immunity.

The trial court, in denying Internet Brands' motion for summary judgment, found that "Alderson was not an employee of Internet Brands. He was used by Internet Brands merely to delete spam blog posts. He could not ban users or move posts. Although website users could block some posts from their view, Alderson's posts could not be blocked by virtue of his role as a spam deleter." The court concluded: "The protection of Alderson's posts that was granted based on his role as a spam deleter supports an argument that [Internet Brands] endorsed his posts' content in some capacity. The existence of any endorsement is a matter for the factfinder to determine."

But the test is not whether the objectionable content was "endorsed," but instead whether the content was "independently created or developed by third-party users." *Levitt v. Yelp! Inc.*, 2011 U.S. Dist. LEXIS 124082 at *20 (N.D. Ca. 2011). And the parties do not dispute that the objectionable content was created by Alderson. Internet Brands would be immune from suit had it removed some content while publishing other content, or changed the order of appearance of content. See *Fair Housing Council*, supra, 521 F3d at 1169-1170. It would also be immune from

9

liability for allowing Alderson's posts while rejecting any information Jape attempted to post. See *Batzel v. Smith*, 333 F3d 1018, 1031 (III) (C) (2) (9th Cir. 2003) (party's alteration of email prior to posting or choice to publish email by rejecting other emails for inclusion in listserve does not rise to the level of "development"). Under this reasoning, we conclude that allowing Alderson to post content while rejecting Jape's attempt to block those posts from his view does not convert Alderson's posts into ones created or developed by Internet Brands. See, e.g., *Ascentive, LLC v. Opinion Corp.*, 842 FSupp.2d 450, 475-476 (II) (C) (3) (E.D. N.Y. 2011) (defendants' invitation to content providers to submit negative reviews and their alteration of the way such postings were displayed, not development of information for CDA purposes); compare *Fraley v. Facebook, Inc.*, 830 FSupp.2d 785, 801-803 (IV) (B) (N.D. Ca. 2011) (allegation that defendant rearranged text and images provided by members and grouped that content in a particular way with third-party logos transforming the character of plaintiff's words, photographs, and actions was sufficient to withstand motion to dismiss).

Internet Brands was not an information content provider because it did not create or develop the content posted by Alderson, nor did it transform Alderson's posts such that it became the developer or creator. See *Fraley*, supra. Internet Brands

therefore could not be considered the publisher or speaker of that information and is entitled to immunity under 47 USCS § 230 (c) (1). The trial court erred in denying Internet Brands' motion for summary judgment on this ground.[4]

2. Internet Brands' remaining enumerations are rendered moot by our holding in Division 1.

*Case No. A14A0220*

3. Jape argues that the trial court erred in refusing to enforce sanctions against Internet Brands for abuse of mediation after the parties' unsuccessful attempt to reach a settlement agreement. During mediation, Jape presented a term of settlement that Internet Brands' corporate representative considered to be a non-customary "extraordinary" term. Although the representative had the authority to simply reject the term, she contacted Internet Brands' general counsel and CEO to consult with

---

[4] Jape argues that because Internet Brands held Alderson out as a "moderator/admin," Alderson was an agent of Internet Brands, and therefore Internet Brands is liable for defamation. But even if the message generated by Internet Brands' software that Alderson was a moderator or administrator created an issue of fact as to whether Alderson was in fact vested with those titles, such evidence fails to create an issue of fact regarding whether Alderson was acting as Internet Brands' agent when he posted the objectionable statements. There is no evidence to show that a moderator/administrator is an agent or employee of Internet Brands, or that the posts were made within the scope of any agency, and Jape has pointed to none. Cf. *Blumenthal v. Drudge*, 992 FSupp 44, 50 (D. D.C. 1998).

11

them on the matter. Following that discussion, Internet Brands rejected the term presented by Jape and the mediation ended.

Jape argues that Internet Brands violated Alternative Dispute Resolution Rule 4.1 which provides in part: "The appearance of all parties is required at mediation conferences. In every process, the presence of a representative with authority to settle without further consultation is required *if the decision to settle depends upon an entity other than a party*." (Emphasis supplied.) But this rule is inapplicable here because the decision to settle did not depend upon any entity other than Internet Brands. And while the corporate representative consulted with Internet Brands' general counsel and CEO during mediation, she had the authority to settle even without doing so.

Jape's argument here is wholly without merit, and the trial court did not abuse its discretion in denying his motion for sanctions. See generally, *Robinson v. Williams*, 280 Ga. 877, 878 (1) (635 SE2d 120) (2006) (absent a showing of abuse of trial court's discretion, appeals court will not reverse court's ruling regarding sanctions); *Hamilton v. Shumpert*, 299 Ga. App. 137, 139 (1) (682 SE2d 159) (2009) (same).[5]

---

[5]Internet Brands' motion for a frivolous appeal penalty is denied.

12

*Judgment reversed in Case No. A14A0219; judgment affirmed in Case No. A14A0220. Barnes, P. J., and Branch, J., concur.*