**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2023**

# In the Court of Appeals of Georgia

A23A0942. SURESH & DURGA, INC. v. JANE DOE.

GOBEIL, Judge.

Suresh & Durga, Inc., ("Defendant"), which owns and operates the America's Best Inn & Suites motel located at 4095 Covington Highway in Decatur ("ABIS"), appeals from the trial court's denial of its motion for summary judgment in Jane Doe's action for negligence and other causes of action based on crimes committed against her on the motel's premises. On appeal, Defendant asserts that the trial court erred in denying its motion for summary judgment on Doe's claims for (1) negligence — premises liability; (2) negligence — negligent hiring/supervision; (3) nuisance; and (4) attorney fees. For the reasons explained below, we affirm the trial court's order denying summary judgment in part, and vacate and remand in part.

"On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo." *Baldwin v. State Farm Fire & Cas. Co.*, 264 Ga. App. 229, 230 (590 SE2d 206) (2003). At the summary judgment stage, the trial court

> must view the pleadings and evidence in the light most favorable to the nonmoving party, it must accept the credibility of the evidence upon which the nonmoving party relies, it must afford that evidence as much weight as it reasonably can bear, and to the extent that the moving party points to conflicting evidence, it must discredit that evidence for purposes of the motion.

*Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 84 (3) (779 SE2d 334) (2015) (citation and punctuation omitted). "The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact." Id. at 82 (3) (citation and punctuation omitted).

So viewed, the record shows that Doe came to ABIS on November 27, 2016 with Bryant Owens. Doe was 17 years old at the time. Owens left Doe in the vehicle while he paid cash for a room. The two then walked around the back of the motel to the room; Defendant denies that any of its employees observed Doe with Owens on the premises or knew of her presence. Owens ordered Doe to sell herself for sex —

2

she walked to a nearby gas station and quickly found a man willing to pay her $50 in exchange for sex. Doe came back to the motel room to complete the transaction, resulting in illegal sex trafficking of a minor.

Before Doe could dress herself, Owens and a female accomplice came into the room. The woman physically assaulted Doe and stole her clothes, while Owens took the money Doe had earned in the sex transaction. They left Doe naked in the motel room. Doe wrapped herself in a comforter and went to the motel office for help. Initially, ABIS employees would not call the police for Doe, instead laughing at her "like they see this all the time." However, she eventually pulled a fire alarm and was allowed to use the phone to call law enforcement. Police arrived and interviewed Doe. Owens ultimately was tried and convicted for trafficking of persons for sexual servitude, pimping for a person under 18, and keeping a place of prostitution for a person under 18, and was sentenced to 20 years in prison.

In December 2020, Doe brought this action against Defendant, originally raising premises liability and negligence, and racketeering claims. After several months of discovery, Doe amended her complaint, asserting claims for: (1) premises liability and negligence; (2) nuisance; and (3) attorney fees pursuant to OCGA § 13-6-11. More discovery ensued, and eventually Defendant filed a motion for summary

judgment. Doe responded, and thousands of pages of evidence were entered into the record. The motion was heard at a hearing on August 26, 2022, and the trial court issued an oral ruling denying Defendant's motion.[1] A one page order referencing the oral ruling was entered denying summary judgment. The trial court also entered a certificate of immediate review, and Defendant filed an application for interlocutory appeal with this Court, which we granted. Court of Appeals Case No. A23I0094 (Dec. 19, 2022). This appeal followed.

1. In its first three enumerations of error, Defendant contests the trial court's denial of summary judgment on Doe's claim for negligence based on premises liability. For the reasons that follow, we affirm the trial court's order in this respect.

(a) (i) In order to support a premises liability/negligence claim, a plaintiff must establish four elements: duty, breach of duty, causation, and damages. See *Retail Property Trust v. McPhaul*, 359 Ga. App. 345, 347(1)(a) (857 SE2d 521) (2021). "In

---

[1] The court's oral ruling (and the arguments made at the hearing) discussed only Doe's claim for negligence, specifically premises liability. During argument, Defendant relied on its brief on the remaining claims, and they were not mentioned again. The court made no oral findings or specific rulings as to Doe's nuisance and attorney fee claims.

a premises liability claim, the owner or occupier of land owes a duty to an invitee[2] to keep the premises and approaches safe." Id. at 347 (1) (a). "However, a property owner is not an insurer of an invitee's safety, and an intervening criminal act by a third party generally insulates a proprietor from liability unless such criminal act was reasonably foreseeable." Id. (citation and punctuation omitted). Indeed, "without foreseeability that a criminal act will occur, no duty on the part of the proprietor to exercise ordinary care to prevent that act arises." *Days Inns of America, Inc. v. Matt*, 265 Ga. 235, 236 (454 SE2d 507) (1995). Accordingly, the foreseeability of the criminal act that led to Doe's injuries is critical for her to establish the elements of duty and breach for her negligence claim, and factors into the other elements as well. See *Ga. CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 722-723 & n. 6 (II) (A) (890 SE2d 209) (2023) ("*Carmichael*") (explaining that foreseeability is relevant to proprietor's duty of care owed, whether that duty was breached, and whether the plaintiff has established proximate cause, albeit in differing ways).

---

[2] We briefly note that the trial court questioned whether Doe was an invitee on the ABIS premises because she may not have been there for a lawful purpose. However, the parties "agreed that [Doe] would be classified as an invitee for purposes" of her premises liability claim, and the trial court concluded that regardless of whether she was an invitee, it would deny the motion for summary judgment.

5

(a) (ii) We turn first to the specifics of Doe's negligence claim. In her amended complaint, Doe asserted that Defendant knew or should have known that dangerous and violent activities (including prostitution, drug crimes, and sex trafficking) were taking place and likely to recur on its premises, and should have taken steps "to prevent the motel from being used as a venue for [Doe's] minor sex trafficking." Doe alleged that the danger to those on its premises was foreseeable to Defendant due in part to a long history of prior criminal activity on the property, including crimes similar to the one perpetrated against Doe. Included in her complaint, Doe listed 45 offenses committed at ABIS in the years leading up to Doe's visit to the motel on November 27, 2016, that she claimed were at least investigated by police. Doe alleged that the motel's general manager lived on site and the property was not large, so there was no way that Defendant's employees were unaware of this long history of criminal activity at its property and the accompanying lack of safety. She alleged that police had interacted with ABIS employees on multiple occasions to investigate violent crimes and sex crimes that had taken place there and that police had labeled the property as "known for prostitution and drug activity."

Indeed, dozens of police reports appear in the record documenting investigations of crimes that took place at ABIS in the few years before Doe's

6

incident, with witness/complainant documentation and officer narratives regarding police interactions with ABIS employees.[3] Satish Patel, ABIS general manager, testified that he did live on the property and the property was outfitted with several security cameras so that employees could observe all sides of the motel.

An officer who worked with the Internet Crimes Against Children ("ICAC") unit of the DeKalb County Police Department testified that ABIS was "a hotel we went to frequently" to investigate sex trafficking against minors. She interacted with hotel employees during these investigations to obtain records and surveillance videos, and to question if they witnessed any criminal activity. She reported that, based on her time in the ICAC unit from 2015-2017, she believed that ABIS "has a reputation

---

[3] In its reply brief, Defendant asserts that Doe relies on inadmissible evidence, including police report narratives, to create the factual questions that precluded summary judgment in this case. Rep Br. 10-13. However, "we do not consider arguments that are raised for the first time in a reply brief." *Stewart v. Johnson,* 358 Ga. App. 813, 814 (856 SE2d 401) (2021) (citation and punctuation omitted). And, in any event, the police reports (the narratives of which are typically considered hearsay but potentially could be used to refresh the recollection of a police officer witness, *Keller v. State,* 286 Ga. App. 292, 294 (1) (b) (648 SE2d 714) (2007), overruled in part on other grounds by *Mayor & Aldermen of City of Savannah v. Batson-Cook Co.,* 291 Ga. 114, 119-120 (1) (728 SE2d 189) (2012)) are but one piece of record evidence supporting Doe's claim that Defendant had some knowledge of the ongoing criminal activity at the property.

7

as a popular and common area for drugs, gang activity, prostitution, and sex trafficking, including of minors."

Doe deposed four women who testified to being trafficked for sex at ABIS. One of these women testified that an ABIS employee purchased sex from her while she was being trafficked at the property. Another woman testified that her trafficker specifically chose ABIS because "ABIS didn't care if pimps were selling girls for sex — they were fine with that" and another testified that, due to the manager's reputation for purchasing sex, the traffickers believed he would not report anything to the police. These women also testified that the sex crime activity at ABIS should have been obvious to any casual observer due to the frequency of scantily clad women standing around in the open, accompanied by men wearing expensive jewelry and driving luxury cars, with frequent and brief visits by single male guests (without luggage) to rooms they had not rented for themselves. Further, there is testimony that the witnesses' pimps, who were renting the rooms, regularly were given rooms on the back side of the motel where the activity was not visible from the street.[4]

---

[4] We also note that the evidence in this case is not undisputed, as there is evidence in the record in Defendant's favor. For example, the prostitution arrests that occurred at ABIS in the years preceding Doe's victimization were the result of undercover operations for which Defendant claimed to have no knowledge. And, although some of the police reports detail officers asking motel employees for

In her amended complaint, Doe listed dozens of potentially negligent actions by Defendant, including, but not limited to, failure to warn invitees about the dangers posed at the property, failure to maintain adequate security practices or policies to keep invitees safe, failure to monitor or observe part of its property, and failure to properly train or supervise its employees.

(a) (iii) The trial court ultimately found that Doe had met her burden of establishing that a reasonable juror could find that she had met the elements of her premises liability claim, focusing its findings on Defendant's knowledge and the foreseeability of the crime committed against Doe. Noting that it was required to find all inferences and weigh the credibility of all witnesses in Doe's favor, the court found that the evidence was disputed as to how much Defendant knew or should have known about the prevalence of sex crimes occurring on its premises and the risk that someone might use its premises to traffic an underage victim for sex. Specifically, the

---

information during these and other investigations, it is unclear from the record whether police officers informed Defendant's employees about the specifics of the operations or the arrests of prostitutes (and, as explained above, police report narratives supporting Doe's claims that ABIS employees were regularly interacting with police are likely inadmissible hearsay). Further, Patel testified that he had never seen anything he believed to be prostitution or sex trafficking in the 20 years he had lived at the ABIS property, nor had the police or any employee reported such activity to him. However, at the summary judgment stage, we view the evidence in Doe's favor as the non-movant.

court found that the foreseeability of Doe's injuries was a question for the jury. The court stated that the case was "replete with jury questions" on the most important issues underlying Doe's claims, and there were facts that could "be argued either way." These findings were incorporated into the court's written order.

(b) (i) Turning to Defendant's specific errors on appeal, Defendant asserts that Doe unquestionably had greater knowledge of the hazard (in this case argued to be the trafficker himself) than Defendant did, and the trial court erred in denying summary judgment despite this fact. Defendant also argues that sex trafficking is a uniquely insidious and clandestine crime, making it more difficult for a non-party to the crime to know of its existence or probability. According to Defendant, these unique characteristics of sex trafficking interrupt the foreseeability of such a danger, even though other sex crimes and violent crimes had occurred on its property. And if the injuries sustained by Doe were not reasonably foreseeable to Defendant, it cannot be liable and was entitled to summary judgment.

Defendant's claims of error on these two issues (comparative knowledge and foreseeability) rely heavily on the argument that the prior crimes committed on the ABIS property (or at least the ones of which Defendant was aware) were not substantially similar enough to the unique crime of sex trafficking to render Doe's

injuries foreseeable. Indeed, in a recent case on this exact question, our Supreme Court explained: "[t]he facts establishing foreseeability in a particular case may vary, but evidence of substantially similar prior criminal activity is typically central to the inquiry." *Carmichael*, 316 Ga. at 727 (II) (C).[5] However, the Court rejected any bright-line rule that requires evidence of substantially similar crimes to establish liability; rather, the question is "whether the totality of the circumstances establish reasonable foreseeability such that the proprietor has a duty to guard against that criminal activity." Id. at 728-732 (II) (C). If prior crimes have occurred on the premises, their temporal and physical proximity to the subject crime, their frequency, and their similarity to the subject incident are all relevant factors to be considered. Id. at 728 (II) (C). And the Court stressed that this question is usually for the jury, unless "no rational juror could resolve the issue in the non-moving party's favor." Id. at 732 (II) (C).

---

[5] Both parties rely upon and/or distinguish the underlying Court of Appeals opinions addressed by the Supreme Court of Georgia in *Carmichael*. See *Pappas Restaurants, Inc. v. Welch*, 362 Ga. App. 152 (867 SE2d 155) (2021) and *Georgia CVS Pharmacy, LLC v. Carmichael*, 362 Ga. App. 59 (865 SE2d 559) (2021). Significantly, the Supreme Court had not yet issued *Carmichael* at the time the parties filed their briefs in this appeal.

Here, we agree with the trial court that, under the totality of the circumstances test, there are disputed questions of fact concerning whether the crime committed against Doe in this case was reasonably foreseeable to Defendant. As explained above, there is substantial evidence in the record that, when accepting the credibility of Doe's witnesses and drawing inferences in her favor (as we must at the summary judgment stage), could allow a rational juror to find that Doe has supported her claim. See *Carmichael*, 316 Ga. at 734-736 (II) (D) (2) (reversing grant of summary judgment on the ground that plaintiff's injuries from shooting in restaurant parking lot were not foreseeable to the defendant restaurant because there had never before been a violent crime in the parking lot; evidence of frequent break-ins in the parking lot and surrounding areas and armed altercations nearby were sufficient to create a jury question under the totality of the circumstances test). These include, but are not limited to, the history of crime at ABIS, testimony concerning the open and obvious nature of the criminal activity, the multiple security cameras allowing employees to witness the activity, and allegations of motel employees' interactions with victims.

(b) (ii) And concerning Doe's supposed greater knowledge of the danger posed by Owens, the Supreme Court in *Carmichael* clarified that, while a plaintiff's knowledge of a hazard is relevant to the ultimate question of liability, the only

12

knowledge relevant to the question of foreseeability (and thus the question of the landowner's duty) is the landowner's knowledge. See 316 Ga. at 727 (II) (C) n. 7. Thus, Doe's alleged superior knowledge of the danger she faced from Owens does not change our analysis of whether Defendant had a duty to act given its knowledge of danger on its premises.

Allegations of comparative knowledge are, however, relevant to ultimate liability. Defendant has pointed to only one premises liability case based on third-party criminal conduct (as opposed to slip-and-fall physical hazards) where the crime victim's "superior knowledge" of the risk of violence was at issue. In *Rice v. Six Flags Over Georgia, LLC*, 257 Ga. App. 864, 867-868 (572 SE2d 322) (2002), we affirmed the grant of summary judgment to the landowner because the sexual molestation of the victim in that case was not foreseeable to the landowner for a lack of substantially similar prior crimes. We also held that, even if the criminal act was foreseeable to the landowner, the victim's knowledge of the danger she faced from the park guest who assaulted her was equal or superior to the landowner's — hence, she could not recover because she "fail[ed] to exercise reasonable care to avoid the danger." Id. at 868. However, we also acknowledged that "the issue of a plaintiff's exercise of due diligence for his own safety is ordinarily a question for the jury." Id.

13

With a record such as this one, even assuming that Doe had knowledge of the danger posed by traveling to ABIS with Owens — where among other considerations, some evidence exists that at least one motel employee had participated in the sex trafficking of another victim and that the motel had a reputation for ignoring or potentially allowing such activity — the extent of Doe's knowledge of the danger and whether Doe's actions were reasonable were questions for jury.[6] See *Richey v. Kroger Co.*, 355 Ga. App. 551, 552-555 (1) (845 SE2d 351) (2020) (reversing the grant of summary judgment to landowner where plaintiff victim was shot after leaving a place of safety to confront a third party who had entered his vehicle on defendant's property; whether victim acted reasonably was not "plain, palpable, and undisputable"). See also *Travis v. Quiktrip Corp.*, 339 Ga. App. 551, 555 (1) (794 SE2d 195) (2016) (explaining that a plaintiff's actions in the face of known hazards bars recovery only where he exposes himself to the danger voluntarily, that is, without coercion). While we do not find that this record necessarily proves the elements of Doe's claims, she has sufficiently established genuine issues of fact

---

[6] Again, we stress that this is a unique case because of the volume of evidence presented by the plaintiff. Another witness presented by Doe who we have not yet mentioned is Antique Whitmore, an expert in counseling and interviewing sex trafficking victims, who testified in this case that Doe's response to her circumstances at ABIS was typical of sex trafficking victims.

14

(given the substantial deference due her as the non-movant) that allow her to plead her case to a fact-finder.

(b) (iii) Additionally, Defendant argues that Doe failed to establish whether it breached its duty of care by failing to take adequate security measures, and in turn whether that breach led to Doe's injuries. Defendant contends that Doe cannot show that the additional security measures she alleged Defendant should have undertaken would have prevented the crimes against her. Defendant argues that its established security measures were within the level of ordinary care required to be exercised under the risks as they were known to Defendant. Finally, Defendant contends that Doe's security expert's opinion is speculative. Again, we find that Doe has established a jury question on breach and causation.

As we have previously held, even if the plaintiff can establish that her injuries from a third-party criminal actor were foreseeable based on conditions known to the defendant, the plaintiff still must show that breaches by the defendant led to her injuries. See *Johns v. Housing Auth. for City of Douglas*, 297 Ga. App. 869, 871-872 (678 SE2d 571) (2009). If "a jury would have to speculate" that the ordinary care measures the plaintiff is alleging were required would have prevented the third party criminal actor from completing the crime, then "[th]e causal connection between the

15

[defendant's] conduct and [the plaintiff's] injury is simply too remote for the law to permit a recovery," as "[s]peculation that raises a mere conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." Id. (footnotes omitted). Put another way, "for purposes of determining foreseeability in the proximate causation (as opposed to duty) context, the relevant question is whether, assuming the proprietor had and breached a duty to protect against certain criminal conduct, the kind of harm that occurred was a foreseeable result, or a 'probable or natural consequence of,' that breach." *Carmichael*, 316 Ga. at 734 (II) (D) (1).

In support of her negligence claim, Doe presented the testimony of a security expert, John Villines, who also prepared a lengthy written report on his analysis of the adequacy of the security measures used by ABIS. Villines opined that ABIS failed to meet "the ordinary standard of care for the security profession" by failing to: assess security vulnerabilities at the site; conduct reasonable inspections to discover dangerous conditions; create a written, site-specific security plan; train staff on security in general and specific to sex trafficking; report criminal incidents; adequately monitor cameras; or engage security guards on the premises. He opined that these failures contributed to an environment wherein the risks of prostitution and

16

human trafficking were not adequately identified or addressed. Defendants contend that Villines' opinion is merely speculative. Even if it is, however, additional evidence supports finding a question of fact. For instance, ABIS manager Patel testified that motels should train their staff on identifying suspicious activity regarding prostitution or sex trafficking, and yet ABIS employees testified that they did not receive any such training. As discussed above, witnesses testified that ABIS had a reputation as a safe haven for sex crimes and that criminal traffickers chose locations to victimize women based on this type of reputation. And, there is at least some evidence that the motel may have been reluctant or negligent in calling the police and/or reporting incidents, as allegedly happened when Doe sought help from ABIS's staff.

Given the standard at the summary judgment stage and the evidence in the extensive record before us, we agree with the trial court that Doe raised a triable issue of fact regarding a possible causal connection between Defendant's failure to implement and follow security measures and Doe's injuries. See *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880, 883-884 (1) (b) (524 SE2d 524) (1999) (jury question as to whether defendant landlord was negligent in securing its premises where plaintiff presented expert witness who testified that defendant failed to exercise ordinary care

17

to prevent foreseeable third-party criminal activity); *James v. Flash Foods, Inc.*, 267 Ga. App. 210, 213-214 (598 SE2d 919) (2004) (questions of fact concerning causation remained in plaintiff's premises liability claim where there had been a previous robbery on the premises, defendant failed to follow its security policies on the night of the incident, and security expert testified that defendant's security measures were likely inadequate) (physical precedent only).

2. Defendant asserts that the trial court erred in denying its motion for summary judgment to Doe to the extent she raised claims related to negligent entrustment, retention, hiring, and training. We agree with Doe that Defendant did not raise these specific issues in its motion for summary judgment (focusing rather on the foreseeability and causation issues discussed above), and therefore we decline to address them at this time. See *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) (a party "must stand or fall upon the position taken in the trial court" and thus we "need not consider arguments raised for the first time on appeal") (citations and punctuation omitted); *Pinnacle Properties V, LLC v. Mainline Supply of Atlanta, LLC*, 319 Ga. App. 94, 100 (2) (735 SE2d 166) (2012) (we "do not consider whether summary judgment should have been granted for a reason not raised below") (citation and punctuation omitted).

18

3. Finally, Defendant asserts that the trial court erred in denying summary judgment on Doe's claims for nuisance and attorney fees. Although the trial court issued a general denial of Defendant's motion for summary judgment, which included argument as to Doe's nuisance and attorney fee claims, the court gave no indication as to what arguments it considered or upon what basis it was denying the motion for those claims. Further, Doe's nuisance claim in her amended complaint is non-specific as to whether she is raising a claim for private or public nuisance, or both, or under what theory her claim was raised. In the parties' briefs on Defendants' motion for summary judgment, they argue over both private and public nuisance theories, with Doe asserting arguments concerning two different types of public nuisance claims, as well as references to OCGA § 41-3-1 (which allows a court to declare a premises a nuisance if its owner knowingly maintained or used it "for the purposes of sexually related charges"). The parties continue to raise arguments concerning all of these issues on appeal — all without clarity regarding under what theory Doe's nuisance claim was asserted or under what theory the trial court denied summary judgment. Under these circumstances, we decline to decide whether the trial court's order was "right for any reason" on the issues of nuisance and (because it may affect the court's order on remand) attorney fees. Rather, we vacate the trial court's order on these

19

issues and remand for additional proceedings. See *Maynard v. Snapchat, Inc.*, 346 Ga. App. 131, 137 (2) (816 SE2d 77) (2018) (right-for-any-reason doctrine "is just one of several principles this Court must consider under the circumstances of individual appeals" and judicial economy may be maximized by returning certain issues to the trial court); *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (appellate courts retain discretion in determining whether to apply the right-for-any-reason rule and consider alternative legal theories not addressed by the trial court on summary judgment, or to vacate order and remand for the trial court to consider alternative legal theories in the first instance).

For all of these reasons, we affirm the trial court's order as to Doe's negligence claims, and vacate the remainder of the order, and remand the case for further proceedings.

*Judgment affirmed in part, vacated and remanded in part. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*